24-13659 Ronald King, et al. v. Day & Zimmermann, Incorporated. Okay, Mr. Wiggins, you're back up. We pled this case the way the law of this circuit says to plead it. And we're away, Rule 8 says to plead it. That you can put more than one person in a count. You can have two or three people in a single count under Rule 8. And that's the way it's always been done in these collective bargaining cases. The Old Fifth Circuit has a long line of these cases on when you have an international and a local and a company who enter into a collective bargaining agreement together. Okay, can I ask you about the – I know there are a lot of issues in this case, but let me ask you about the class allegations. You proposed a class that included a national class as opposed to requesting two subclasses, one involving the Union and Day v. Zimmermann in certain states and then another subclass with regards to the rest of the United States. What was the class you asked to certify? It's only a Local 91 class, which is Northern District of Alabama. What about the – well, there's language in the class allegations about nationwide, aren't there? No. No? There's an international union out of Baltimore, and the local union is its arm in Birmingham and the general area around Birmingham. But the class is limited to the jurisdiction of Local 91. No, you said – I thought that the proposed class as written, as alleged, purported to include all African American, that is, all black employees of Day v. Zimmermann, which is a national contractor, during the relevant time period. Does that not sweep in everybody for Day v. Zimmermann nationwide, or am I mistaken about that? No, I don't remember that being in there. But I do know this, that the case has always been limited to the Southern Company Collective Bargain Treatment, SCMMA. And the SCMMA only applies, in this case, to the Local 91's jurisdiction. The SCMMA, there's an Alabama wing of it for the Alabama Power Company. There's one for Mississippi Power, there's one for Georgia Power. But they have separate sections, and this case arises under the steam plants at Alabama Power. There's no – I don't remember anything that we even hinted at a nationwide class. And I don't remember that that was an issue and why she found it to be not properly pled. The error that we're alleging is that this is not a Walmart case. Walmart involves low-level supervisors with free discretion to hire and fire at thousands of nationwide plants, a class of well over several million. This case involves one decision-maker, the business manager of the union. He's elected. He makes the choices of what happens on those – he's the one that runs the out-of-work list. He's the one that makes the referrals. He's a paid but elected member of the union. So this is a single decision-maker case. This is a single location case. And it's a contractual case. The problem in Walmart was – But this case is against Dan Zimmerman, not against the union, right? The – this – we pled this both because, as you heard in the first argument, the company requests the referral. The union makes the referral. The company does the hiring. It's a single system. It's a single transaction, essentially. Right, yeah, I get that. But this complaint in this case was just against Dan Zimmerman. Is that not right? The first complaint was against all three, the international, local, and the company. She found that to be a shotgun pleading because we had three defendants. And she said, well, you did not separate them out. So she said, refile. So we filed a second complaint. We set separate cause of action. This company, DZ, is in one cause of action, and the unions are in another cause of action. So to what extent is this complaint duplicative of the complaint in King v. UA, international and the local? Well, it was always one lawsuit. But when DZ went out on the out-of-work list, I mean the shotgun pleading ground, the union, I mean the class went out too. She dismissed with prejudice, with no right to even have one amendment, the class on out-of-work. But you didn't – you asked for leave to amend, but you didn't ask for leave to amend the class allegations, right? She would not let us. How do you know that? She allowed amendment on the other stuff. Why didn't you ask for leave to amend the class allegation? Because she ruled – she dismissed with prejudice. The first dismissal was not with prejudice? On the class it was. The first time they raised the Walmart defense on the class, she said, you don't meet the standards of that, and it's also a shotgun pleading, and it's dismissed with prejudice. We do not have a right to replead that. And so let me ask you a question about this. Have you appealed the dismissal of the first amended complaint as a shotgun pleading to us? Yes. Where is that in your blue brief? I mean, well, I'll tell you what, like Judge Jordan did, if you don't mind, on rebuttal, if you can tell me where in your blue brief you've made that argument to us. All right. Because, of course, one of their arguments, as I recall, is, look, there were two bases on which the district court dismissed the class allegations in the first amended complaint. One, shotgun pleading. Two, you don't meet 23. Here before us, I don't see that you've challenged the dismissal of the first amended complaint as a shotgun pleading. And if that's true, then the class allegations are just gone and not appealed. We appealed the shotgun pleading, and it was in the first amended complaint. Our shotgun pleading can only apply to the first amended complaint. That's the only one that it happened to. Could you please give me the blue brief in this case? The unions filed answers, both to the first complaint, the original complaint, the first amended complaint. They filed answers to both. The company filed a motion to dismiss on shotgun pleading grounds against the class certification and against the claim itself. And she granted the – she dismissed the Rule 23 part of the case on shotgun pleading grounds. But I believe it's in the statement of issue. Okay. Yeah. I'll figure it out. I also thought, Mr. Wiggins, that the first dismissal order, both on shotgun pleading grounds and on the class allegations, was without prejudice. Those are docket entries 43 and 44. You're saying that those were with prejudice the very first time? As to the class. As to the class. Yes. Okay. All right. I'll take a look. My notes say differently, but maybe I'm mistaken. And just so you'll understand my point, and I might be dead wrong about this, I certainly understand that you have appealed the dismissal of your second amended complaint as a shotgun pleading. Got it. Totally understand that. That's squarely before us, and we can debate shotgun pleading. What I was asking is whether you have appealed the dismissal of your first amended complaint as a shotgun pleading. Because in dismissing that complaint, the district court dismissed the entire thing as a shotgun pleading, and out with it went your class claims. And so if you haven't appealed the dismissal of your first amended complaint as a shotgun pleading, then I worry that that ground still stands and unappealed. I think the confusion is coming in that there's an original complaint, then there's a first amended complaint, and then there's a second amended complaint. Like they said a minute ago, there's actually four complaints at the end of the day, original plus three. The first complaint, the original complaint, we were given a chance to amend that, so we filed the first amended complaint. Yeah. But they had not attacked the class certification in that original complaint. The two unions had filed answers. They didn't attack anything. And so here we are with the first amended complaint. It's got the class allegation. And it gets dismissed. Very first time the issue's been raised. I haven't had a chance to replead yet on shotgun grounds. Okay, that's good. I got it. Yeah. Okay, Mr. Wiggins, we'll give you your time for rebuttal. Thank you. Mr. Busse. Good afternoon, if it pleases the court. Zachary Busse for Appalachian Day and Zimmerman. I will pick right up with the procedural issues if I may. I believe that the panel's recounting of it is correct. So the original complaint, I don't believe bears any bearing on this appeal. There has been a first amended complaint, and that had a pretty hefty motion to dismiss by my client. And the court did engage in a Rule 23 plausibility analysis in dismissing that complaint. But the beginning and end was this complaint, as to Day and Zimmerman, is a shotgun pleading. It is dismissed. And plaintiffs were given leave to replead. Or were allowed to seek leave to replead. And they did. And at the time they did, they declined to refile the class allegations or the class claims as to my client. Our position is, is because with the court's guidance about what plausibility would be, we don't believe that they could plausibly plead the class claims. So as of the second amended complaint, there were no class claims as to my client. And that is stated even in the motion for leave and later in subsequent briefing. As of the second amended complaint, what survived as to my client were disparate treatment and disparate impact, race discrimination claims, as well as two retaliation claims on behalf of two of the plaintiffs. At that time of that pleading, the second or third amendment? The second amended complaint. At that time, no class allegations brought over from the initial complaint or independently pled? Correct. As of the second amended complaint, my client, DZ, was not facing a class claim or allegation. We were facing individual, albeit five individuals, claims of race discrimination and two claims of retaliation. Correct. We move to dismiss again, arguing a few things, but pertinent to this appeal, that in the second amended complaint, the disparate treatment and discrimination claims remained a shotgun pleading. And the court agreed with that and dismissed the discrimination claims as to my client on shotgun pleading grounds. It seems to me, here's part of the case I think I do understand. My reading of the district court's order on the second amended complaint was that it conflated shotgun pleading standards with 12B6 plausibility standards. And that the latter shaded the former. I mean, I read the complaint. I can understand it. I know where it's going. Maybe a couple of things about it are vague and ambiguous and difficult to understand. But it's hard to think of that entire complaint as a shotgun pleading. You know what they were pleading against you. Not on the retaliation. I know those survived. But on the discrimination claims. And so I'd like you to address that concern of mine that the district court was sort of doing a little bit of 12B6 when it was said it was doing shotgun pleading. And that matters potentially because if you're doing 12B6, you get de novo review. If you're doing shotgun pleading, you get abuse of discretion review. And so let me table set to make sure that I have it right. So we're at the second amended complaint. We're talking about the discrimination claims, not about the retaliation claims. And the court said still had a shotgun pleading problem. Yes. And then those reappeared in the attack, the third amended complaint. And they went forward to summary judgment to the court's question. There was some 12B6 analysis with the second amended complaint. Like off the top of my head, whether disparate impact is viable under 1981 and whether that's plausible at the end of the day. But where the court landed is that the treatment, the discrimination claims were a shotgun pleading. And the reason for that, our opinion of the court's analysis, is what the court was really saying is I can't get into plausibility about these claims. Because I can't even understand who the claims are asserted against. And we kind of heard that, if I may, in the oral argument about the unions and the plaintiffs. The lack of clarity around which action are you claiming to be discriminatory and which defendant are you claiming took that action. Before I let you continue, just clarify something for me. The second amended complaint listed who as defendants? Everyone in the case. The unions and the three defendants. The unions and DZ. Third amended complaint. Who's listed as defendants? Still listed as all three. But at that point, the claims as to DZ were squarely the retaliation claims with very discreet acts on behalf of DZ employees. No, that I recall. But the set of defendants remained the same from the second to the third amended complaints. Yes, that's correct, Your Honor. The set of defendants admittedly remained the same from the original complaint through the conclusion of the case. Where there is a lot of murkiness, admittedly, it is because among the defendants there were some different strategies at the outset of the case as to how to attack the complaint or whether to proceed to discovery. But by the second amended complaint, everyone was pretty aligned on attacking from whether a shotgun pleading process or a 12B6 basis, the allegations in the complaint. But the sets of defendants were the same. The allegations were intermingled and mixed. And that is why on the discrimination allegations, the court dismissed my client, our contention is squarely under shotgun pleading. And the plausibility discussion or analysis in that opinion, either A, dealt with an issue that's no longer an issue on appeal or B, were framed as I can't even get to or I certainly couldn't say this is plausible because I can't get past how it is still a shotgun pleading. What were the shotgun pleading problems that were most, in your view, pervasive for the district court? The inability to figure out who had done what or whether to figure out or how to figure out whether anything anybody alleged to have done was discriminatory or both? I think more the first than the second. So I'm not here to tell the court that there was a bright line or there was only one discussed. But to use the court's analogy as to which is coloring which, it is the Rule 8 and Rule 10 shotgun pleading analysis that colored whether, or if I may, if it was even plausible to conduct a plausibility analysis under 12B6. And because the district court, where we are in this framing with the shotgun pleading and exercising its discretion, could not determine as to my client what was supposedly discriminatory, who supposedly did it, when it supposedly happened, the court could then not complete the plausibility analysis to say this is dismissed with prejudice under 12B6. It was instead a, I've given you opportunities to plead, and following this court's precedent, not an immediate dismissal with prejudice for shotgun pleading, but having revisited the issue now a number of times, the court proceeded to kick those claims with prejudice and the retaliation claims proceeded against my client. Okay. Can we talk about the retaliation claims? We can. And why you believe that district court correctly granted summary judgment in your client's favor? Yes, so we have the individual Jones and Samuel, and both of those instances and why we believe the district court should be affirmed comes down to causation. And both of the causation arguments have two prongs. The first causation argument is that in all of their cases, as to both individuals, there was no record evidence that the decision maker had knowledge of the protected activity. And there is a lot to be said right now, perhaps more than ever, about McDonnell Douglas or convincing Modesaic or what evidentiary standards should apply at summary judgment in employment cases. Under any version of an evidentiary framework or under no evidentiary framework at all, it is a requirement of the claim that the decision maker have knowledge of the protected activity in order for the claim to survive. In one of them, there was at least some verbal sparring about who the decision maker was. And I forget which one of the two plaintiffs that referred to, right? I believe Jones, Your Honor, with Mr. Winnett or Mr. Aaron. Tell me about that, please. Yeah, so I think the most important takeaway from that is that it doesn't matter because there was no evidence that either had knowledge. And so the verbal sparring was over whether Mr. Winnett, as the site superintendent, my client maintained, that is your ultimate decision maker. He was consulted. He authorized the subordinate to sign off. Here is your decision maker. Plaintiff at the trial court level said, no, no, it is the individual who signed the form, who made, that is who made the decision, and they are the decision maker. And as we argued to the district court, and I believe the district court got right, we appreciate what is an immaterial fact as to which decision maker we're talking about because neither decision maker had knowledge of the protected activity. So under any version of events, the claim still fails. And I think the court was clear and correct to say, I will take plaintiff's version. I will assume that it is this other individual you were framing as a decision maker. And the analysis is the same. It concludes the retaliation claim. The other individual at the district court level, the debate was over some unpleaded allegations about a variety of protected activity as opposed to the pleaded protected activity. And here, too, the district court said, I don't think you pleaded these. And there were some concerns from the district court about the appropriateness of what was being relied on versus what was pleaded. But the court said it doesn't matter because Mr. Vick, the identified decision maker, plainly testified that he did not have knowledge of anything at all until after the case was filed. And now on appeal, we've shifted a little bit. Appellant are now at, well, it was a different decision maker. It was someone else. And our position on that is that issue wasn't even contested at the district court level. It was agreed upon that Mr. Vick was the decision maker. The record evidence supports that. And so we get to the same conclusion, that because the decision maker did not have knowledge, while I will certainly take any question about evidentiary framework or convincing Mosaic or McDonnell Douglas, none of that is pertinent to the appeal because the absence of knowledge defeats the claim. The other prong of the causation issue is favorable treatment and our position that the record evidence of intervening favorable treatment breaks any chain of causation. Pardon me. So for Mr. Jones, for example, to accept plaintiff's theory, Mr. Jones engaged in protected activity while not employed with Day and Zimmerman. We had to hire him in order to fire him in a retaliatory way. And again, on that undisputed chain of events, our argument is that as a matter of law, if you're going to assume that we had knowledge of the protected activity, then hiring him with that knowledge breaks the chain of causation at the end of the day. But this doesn't mean your point is wrong, but if that factual temporal line might still lead to a plausible claim if the decision maker learned of the protected activity after the first hiring. I agree with you. And before the firing. I agree with you as a hypothetical. So again, our main point is that no one had knowledge. Plaintiff, now on appeal too, has argued, well, everyone had knowledge. And our position is you cannot have it both ways. You can't selectively pick who had knowledge when. Either we accept the record evidence that no one had knowledge, or if we accept the hypothetical that everyone had knowledge, then the hiring with that knowledge breaks the chain of causation. I do want to move quickly just back to the class allegations for a moment. There is a lot that perhaps could be discussed around those. And to the panel's earlier point, and we do agree, the appealing of the class rulings in the First Amendment complaint, whether you square that under 12b-6 or shotgun pleading, we do believe it's shotgun pleading, have not been challenged and are not raised in this appeal. But even if we allow that, you still do not get to any meaningful analysis around the class allegations until, from our perspective, you survive an abuse of discretion review around the dismissal of the individual discrimination claims as a shotgun pleading. Because without the individual claims, the class claims analysis doesn't go anywhere. And I don't think there's a dispute, at least about how the procedure around that works or how the law around that works in terms of you have to have a viable individual claim to even proceed with a class analysis. There was never any allegation that there were... ...to a certain number of locations and states, or did they also include potentially a nationwide class of people hired by or potentially hired by Dan Zimmerman? We always understood the allegations in the original when the class was challenged to be a nationwide class, to be susceptible of claiming other work sites even beyond whatever affiliation we had with the named unions. Okay. All right. Thank you very much. Thank you. The problem of the retaliation claim is that no body, no decision maker, stepped forward and articulated a reason. That's an essential requirement. The Supreme Court said in Burdine, the lawyer can't articulate it. You have to have a witness articulate it. You mean the reason for the termination? Reason for the, yes, the termination and the transfer. But it's your burden to prove that it was based on discrimination as opposed to some other bad reason. And we think we did that. The question became on the summary judgment, who was the decision maker? And each one of them said I was not the decision maker. The ones that they kept pointing to, Wynette, said I wasn't it. Vic said I wasn't it. They never even suggested that Mike Millsap was it. That's who we think it really was. But they didn't present any evidence from him as articulating a reason, a nondiscriminatory reason. But don't you have to prove knowledge of the protected activity to infer discriminatory animus for retaliation? Yeah, and we did that. So who knew? Mike, Vic, the evidence showed that Vic called up our client and said, did you oppose the discrimination over there at the other plant, the Miller plant? Did you tell them you thought they were discriminating? He said, yes, I did. Vic knew that. Now secondly— Can I ask you a quick question about that? In the operative complaint, did you plead that Samuel—I guess we're talking about now, right, with respect to Vic— that Samuel took actions that were protected by the so-called Opposition's Clause? Yes. Yes, sir. All right, so I guess the only things I saw in the complaint were you alleged that there was retaliation on account of having filed the EEOC charge, like formally participating in the EEOC process. There's a section of our brief that takes you through the complaint and shows when we opposed both the Opposition and the EEOC charge. But even if you're going to limit it to the EEOC charge, Vic also was told by his general foreman, that was his subordinate, that— Samuel. I can't hear you. Samuel? Samuel, yeah. That Samuel was opposing and complaining about the discrimination. And he said he told him twice, two different times. But hold on, I thought you said even if we limit it to the formal participation in the EEOC process, and then you said, you know, Vic was told that Samuel was opposing, but that's a different thing, right? Opposition and participation are two different forms of whistleblowing, so to speak. Well, I don't agree as a matter of law, but that's not—we're not relying on that particular point. But there were three EEOC charges. You admit in your blue brief, right, you say Vic was not aware Samuel had filed the charge. So Vic didn't know that Samuel had filed an EEOC charge. We didn't say that. We said he did know. You can keep going. Yeah. There's three—Samuel, Chris Samuel, filed three charges. One in January 2018, one in April or May 2018, and one in February 2019. And the time that—who was it? When Vic called up Samuel after the second charge and he said, did you oppose discrimination? And it's in the exact deposition testimony in the brief. Then he gets sent over to Vic's plant. And Interior Gray, the general foreman, was told by Samuel that he opposed the way he was being treated, that he was being taken out of a foreman job and was being replaced by someone else. But that's not the EEOC charge. That's opposition to an alleged discriminatory practice, right? Well, the repercussion from it was after the charge. I understand that. But what Vic was told was not about the EEOC charge but about his opposition at the other plant? But you're correct. That was opposition up until he filed the third charge. Okay. And is it your contention that Vic knew about the charge? Vic did not deny. Well, your brief says Vic was not aware P. Samuel had filed a charge, period, with a bunch of record citations. I don't— Top of page 49. Let me see. Very first line on page 49. Top of that blue brief? Yes, sir. Yes. In this appeal, not the earlier one.  Page—what page? Page 49, first line. Okay. You're talking about top of the page? Top of the page. 49 is at the bottom of the page. You're talking about ECF 49? No, page 49 of your brief, as you have paginated the brief. Oh, maybe I got the wrong brief. I've got the union brief. I mean, it's fine. It doesn't really matter. It's a matter of public record. Don't worry about it. It's good. Yeah, I apologize. No, it's okay. I picked up the wrong brief. We'll give you 30 seconds to wrap up, Mr. Wiggins. Well, I think all this is covered in the brief. The class certification was made—the basic ruling on the shotgun pleading, I think, was an extension of the mistake about what the Walmart decision stands for and what McDonnell Douglas—I think both times they ruled on shotgun pleading. It was because we did—it was thought that we had too many—we had three defendants. Even though they're in separate counts, the judge said, still getting confused. And that was a function of the McDonnell Douglas error and of the Walmart error that we've alleged. All right. Thank you both very much. We're in recess. Here's the brief, Alan. Thank you very much.